IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JEFF DAVIS TROUT | § | |
| | § | |
| V. | § | |
| | § | A-10-CA-928 SS |
| MICHAEL J. ASTRUE, | § | |
| COMMISSIONER OF THE | § | |
| SOCIAL SECURITY ADMINISTRATION | § | |

# REPORT AND RECOMMENDATION
## OF THE UNITED STATED MAGISTRATE JUDGE

TO:  THE HONORABLE SAM SPARKS
     UNITED STATES DISTRICT JUDGE

Before the Court are Plaintiff's Original Complaint seeking reversal of the final decision of the Social Security Administration (Clerk's Doc. No. 1); Plaintiff's Brief in Opposition to the Commissioner's Decision (Clerk's Doc. No. 9); Defendant's Brief in Support of the Commissioner's Decision (Clerk's Doc. No. 10).; and Plaintiff's Reply Brief (Clerk's Doc. No. 11) Also before the Court is the Social Security record filed in this case (Cited as "Tr."). Plaintiff Jeff Trout appeals from the determination that he is not disabled and presents two issues for review: (1) whether the Administrative Law Judge (ALJ) provided good cause for rejecting opinions from Trout's treating physician; and (2) whether the ALJ properly determined that jobs exist in the national economy that Trout could work given his residual functional capacity (RFC).

The undersigned submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(h) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

# I. GENERAL BACKGROUND

On October 27, 2008, Trout filed for disability insurance benefits (DIB) under Title II of the Social Security Act. After his claim was denied on December 11, 2008, and again after reconsideration on February 24, 2009, Trout requested an administrative hearing. On August 21, 2009, ALJ Norman conducted a hearing, and Ted Norwood represented Trout at the hearing. During the hearing, Karen Nelson testified as a vocational expert (VE).

The ALJ issued an unfavorable decision concluding that Trout was not disabled. Trout appealed to the Appeals Council, but the Council denied his request for review on October 8, 2010. After exhausting his administrative remedies, Trout now brings the instant action and seeks review of the administrative proceedings pursuant to 42 U.S.C. § 405(g).

# II. ALJ'S FINDINGS

The ALJ found that Trout acquired sufficient social security coverage to remain insured through December 31, 2012. Tr. 34. Trout had not engaged in substantial gainful activity since August 22, 2007, which is when Trout claims he became disabled. *Id.* Trout also suffers from two severe impairments: hepatitis C and fibromyalgia. *Id.* Trout was first diagnosed with hepatitis C in October of 2007. *Id.* Trout underwent treatment, and as of July 2009, he has tested negative for hepatitis C. *Id.* Trout has also complained of aches, pains, and fatigue. Dr. Jennifer DeVoke, his treating physician, diagnosed Trout with fibromyalgia in February of 2009. As a result of his condition, Trout suffers from "chronic fatigue, difficulty concentrating, weakness, and sleep disturbance." *Id.* at 35. Several months after this time, Trout states that his joints felt inflamed, his

extremities swollen, and myalgias developed in his back and legs. *Id.* However, Dr. DeVoke describes his fibromyalgia as "better" and that his pain and energy levels also improved. *Id.* [1]

After reviewing Trout's impairments, the ALJ found that they did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 36–37. The ALJ reviewed the impairments in Appendix 1 for hepatitis C and determined that Trout did not suffer from "hemorrhaging, ascites or hydrothorax, spontaneous bacterial peritonitis, hepatorenal syndrome, hepatopulmonoary syndrome, hepatic encephalopathy, or end stage liver disease." *Id.* at 36. And he looked at impairments in the musculoskeletal system, neurological system, and other body systems to determine whether Trout's fibromyalgia medically equaled a listed impairment and determined that it did not. *Id.* at 37.

Considering Trout's impairments, the ALJ determined that Trout has the residual functional capacity to perform light work, except he must be free to alternate between sitting and standing at will, and he must avoid heights, climbing, and moving or dangerous equipment. *Id.* In arriving at his conclusion, the ALJ considered Trout's daily activities, his pain and other symptoms, factors that cause or worsen his symptoms, possible medication and treatment, other methods that relieve his symptoms, and "any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms." *Id.* at 37–38.

Trout testified at the hearing, and he described the severity and frequency of his symptoms, including fatigue, joint pain, and headaches. *Id.* at 38. He also detailed how he attempted to alleviate his symptoms, and he explained his average day on "good days" and "bad days." *Id.*

---

[1]The ALJ also considered two other proffered impairments: headaches and depression. But the ALJ found these to be non-severe, and Trout does not object to the ALJ's classification. *Id.* at 35–36.

Although the ALJ found evidence that Trout could suffer from the described symptoms, the ALJ disagreed with Trout's statements about the "intensity, persistence and limiting effects" of his symptoms because they were inconsistent with other evidence. *Id.* In his testimony, Trout offered conflicting statements. For example, while he stated that he could not perform most basic household chores, he admitted that he often prepares his own meals, takes care of his yard, washes the dishes, drives for errands, and walks or rides his tricycle for exercise. *Id.* Further, Trout's medical records indicate that he has successfully controlled his hepatitis C and no longer has a viral load. *Id.* at 39. The ALJ also discussed Dr. DeVoke's opinion that Trout could not perform even sedentary work. *Id.* The ALJ gave "little weight" to Dr. DeVoke's opinion because he found her opinion "inconsistent with other clinical and objective findings," including Dr. DeVoke's notes that Trout's fibromyalgia, and associated pain and energy levels, were "better" in the summer of 2009. *Id.*

After considering Trout's testimony and reviewing the record, the ALJ found Trout not disabled, with a residual functional capacity to perform light work with certain limitations. *Id.* These limitations prevent Trout from performing any past relevant work—he previously worked as a welder and a rigger. *Id.* Therefore, the ALJ consulted the vocational expert and concluded that jobs exist in significant numbers in the national economy that Trout—considering his age, education, work experience, and residual functional capacity—may perform. *Id.* at 40. Although Trout cannot perform all unskilled, light exertion jobs, the ALJ determined that he could "perform the requirement of representative occupations such as an assembly press operator . . . a laundry press operator . . . or a shipping receiver." *Id.* Therefore, the ALJ concluded that Trout is not disabled.

4

## III. ANALYSIS

### A. Administrative Definitions and Standards

The Social Security Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine if a claimant is able to engage in "substantial gainful activity" (and therefore if he is disabled) the Social Security Commissioner uses a five-step analysis:

1. a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are;

2. a claimant will not be found to be disabled unless he has a "severe impairment;"

3. a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors;

4. a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and

5. if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work.

*Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); 20 C.F.R. § 404.1520. A finding of disability or no disability at any step is conclusive and terminates the analysis. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The claimant has the burden of proof for the first four steps; at step five, the burden initially shifts to the Commissioner to identify other work the applicant is capable of performing. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). Then, if the Commissioner "fulfills [his] burden of pointing out potential alternative employment, the burden . . . shifts back to the claimant to prove that he is unable to perform the alternate work." *Id.* (citation omitted).

5

B.    **Standard of Review**

Judicial review of the Commissioner's final decision under the Social Security Act, 42 U.S.C. § 405(g), is limited to two inquiries: (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner correctly applied the relevant legal standards. *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997). Substantial evidence is more than a scintilla of evidence but less than a preponderance—in other words, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). The Court considers four elements of proof when determining whether there is substantial evidence of a disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Id.* at 174. However, the Court cannot reconsider the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If the Court finds substantial evidence to support the decision, the Court must uphold the decision. *See Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) ("If the . . . findings are supported by substantial evidence, they are conclusive and must be affirmed."); 42 U.S.C. § 405(g).

C.    **Trout's Claims of Error**

   1.   **Did the ALJ provide good cause for rejecting Trout's treating physician's opinions?**

Trout claims that the ALJ inadequately explained why he rejected Dr. DeVoke's opinion that Trout could not perform sedentary work. Dr. DeVoke completed a questionnaire, and Trout claims

that the ALJ failed to adequately address Dr. DeVoke's opinions. In particular, Dr. DeVoke circled "20-30 minutes" when asked the number of minutes Trout can sit at one time and "15-20 minutes" for standing at a time. Tr. 268. Trout argues that the ALJ failed to provide good cause for rejecting these opinions.

First, the ALJ did not reject all of Dr. DeVoke's findings. Rather, he rejected Dr. DeVoke's opinion that Trout is disabled and unable to work, as those are not medical opinions that receive special significance. *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003). In defense of the ALJ's decision, the Commissioner highlights the ALJ's justifications for rejecting Dr. DeVoke's opinions on Trout's ability to sit and stand for prolonged periods of time: Dr. DeVoke indicated that Trout's impairments would not last at least 12 months, Tr. 267; and Dr. DeVoke had only treated Trout for five months when she gave her opinions, Tr. 265. The justifications appear unnecessary. Despite claiming that he gave little weight to Dr. DeVoke's opinions—based on inconsistencies in the record—the ALJ did incorporate Dr. DeVoke's opinion on Trout's ability to sit or stand for prolonged periods when he determined Trout's RFC. Specifically, in determining Trout's RFC, the ALJ acknowledged that Trout must have the ability to sit and stand at will. Trout concedes in his reply brief that the ALJ included an "at will" sit/stand limitation in Trout's RFC. Reply Brief at 2.

Perhaps Trout is making the more subtle point that the ALJ's conclusion that Trout must be permitted to stand/sit at will is not fully consistent with Dr. DeVoke's questionnaire response that Trout can only sit for 20-30 minutes and a time and stand for 15-20 minutes at a time, and the ALJ did not explain why he reached the "at will" conclusion and rejected the more specific time periods suggested by DeVoke. This is a semantic, not a substantive, argument. If in determining Trout's residual functional capacity, the ALJ used a limitation that Trout must be permitted to sit and stand

7

at will, that is more generous (or more limiting) that the requirement that Trout be permitted to sit for 20-30 minutes and then stand for 15-20 minutes. Thus, even if there is any difference between Dr. DeVoke's opinion and the ALJ's assumed limitation, the difference did not harm Trout. Further, Dr. DeVoke answered affirmative to whether Trout needed the ability to sit and stand *at will*. Tr. 269. Therefore, the ALJ did not reject Dr. DeVoke's opinion on Trout's ability to sit and stand, and even if he did, Trout cannot demonstrate error.

  **2. Did the ALJ properly determine that jobs exist in the national economy that Trout could perform provided his residual functional capacity?**

Trout claims that the ALJ erred when he determined Trout could work certain jobs that exist in the national economy given his RFC. Social Security Ruling SSR 83-12 states that "[u]nskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will." Trout claims that the vocational expert (VE) testified that Trout could work "light" jobs—with the limitation that he could alternate between sitting and standing at will—without "explain[ing] the appropriate vocational principles or methods" used in forming her conclusion. Plaintiff's Brief at 10.

If a claimant has an "unusual limitation of ability to sit or stand" then the ALJ should consult a vocational specialist "to clarify the implications for the occupational base." SSR 83-12. At the hearing, the ALJ had a VE testify about unskilled light jobs that exist in the local and national economies that allow workers to sit and stand at will. The VE claimed that her opinion was consistent with *The Dictionary of Occupational Titles* (DOT), but the DOT does not list occupations that allow individuals to alternate between sitting and standing at will. Trout claims that the ALJ erred when he adopted the VE's "conclusory testimony" without making an effort to determine

whether the VE's opinion "was premised on *any* reliable facts, observable data, or generally accepted methods used in the field of vocational counseling and placement." *Id.* at 11.

This assertion resembles Trout's previous objection to the ALJ's decision. It appears that Trout objects to the VE's testimony because she did not specifically consider Trout's limitations on sitting for 20-30 minutes at a time and standing for 15-20 minutes at a time.[2] But as already discussed, the VE used a sit/stand at will limitation in determining Trout's RFC. The VE identified jobs that an individual with Trout's limitations could perform that exist in significant numbers in the national and local economies. And the ALJ justifiably relied on the VE's testimony that work exists for Trout considering his RFC. *See Masterson v. Barnhart*, 309 F.3d 267, 273 (5th Cir. 2002) (upholding the ALJ's decision to rely on the vocational expert's testimony). Trout does not offer contrary evidence that the jobs provided by the vocational expert exceed his limitations; therefore, his claim fails.

## IV. RECOMMENDATION

Based upon the foregoing, the undersigned Magistrate Judge **RECOMMENDS** that the District Judge **AFFIRM** the decision of the Commissioner in this case and **ENTER JUDGMENT** in favor of the Defendant.

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are

---

[2] *See* Plaintiff's Br. at 11 ("Mr. Norwood did attempt to question the VE about Dr. Devoke's opinion (that Trout would need to sit for 20 to 30 minutes at a time before needing to get up and stand for 15 to 20 minutes at a time before needing to sit down or walk around). But the VE failed to specifically respond to the questioning. . . . Clearly both the ALJ and the VE ignored the specific opinions of Dr. DeVoke, despite the representative's attempt to acquire her expert testimony.").

being made.  The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150–153 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 4th day of January, 2012.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE